UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OBIE BANAWIS-OLILA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WORLD COURIER GROUND, INC., et al.,<br><br>　　　　Defendants. | Case No. 16-cv-00982-PJH<br><br>**ORDER DENYING MOTION TO DISMISS COUNTERCLAIMS**<br><br>Re: Dkt. No. 43 |

Before the court is plaintiff Obie Banawis-Olila's motion for partial dismissal of defendant's counterclaims. Dkt. 43. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for November 16, 2016 is VACATED. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion, for the following reasons.

**BACKGROUND**

**A.　Procedural History**

This is an employment dispute that was removed from state court on the basis of diversity. Banawis-Olila worked as a dispatcher for defendant World Courier Ground, Inc. ("WCG") from 1998 until her resignation in September 2015. Dkt. 39, Second Amended Complaint ("SAC") ¶ 1. In the operative complaint, Banawis-Olila asserts six causes of action against WCG: (1) violation of the California Equal Pay Act, Cal. Labor Code § 1197.5 ("the EPA claim"); (2) failure to provide rest periods, in violation of Cal. Labor Code § 226.7; (3) failure to provide duty-free meal periods, in violation of Cal. Labor Code § 226.7; (4) failure to pay overtime compensation, in violation of Cal. Labor Code

§ 1198; (5) violation of Cal. Bus. & Prof. Code § 17200; and (6) failure to pay "waiting time penalties" required by Cal. Labor Code § 203.  SAC ¶¶ 6–36.

On May 23, 2016, the court entered an order granting defendants' motion to dismiss the original complaint.  See Dkt. 25.  The court dismissed all claims against former defendant Amerisourcebergen Corporation ("ABC"), the EPA claim, a constructive discharge claim, and a number of claims based on gender discrimination.  Id. at 13.  Leave to amend was granted with respect to the EPA claim, the discharge claim, and the claims against ABC.  On June 16, 2014, Banawis-Olila filed her first amended complaint ("FAC").  Dkt. 32.  The FAC abandoned the discharge claim and the claims against ABC, but reasserted the EPA claim.

On July 29, 2016, the court granted a motion to dismiss the EPA claim, but again provided leave to amend to provide sufficient facts comparing the "skill, effort, and responsibility" and the "working conditions" of the two positions.  Dkt. 38.  The second amended complaint followed on August 24, 2016, and WCG answered on September 21, 2016.  Dkt. 40.

**B.   The Allegations in WCG's Answer**

WCG's answer asserts three counterclaims against Banawis-Olila.  The factual basis of the counterclaims centers on the events that led to Banawis-Olila's resignation, particularly her alleged involvement in the disappearance of a "missing and valuable military package."  Answer ¶ 6.

**1.   Bicol's Operations for WCG Under a Suspended License**

During her employment with WCG, Plaintiff and her husband owned and managed a trucking company called Bicol Express, Inc. ("Bicol").  Bicol was one of WCG's "third-party deliverer vendors."  Answer ¶ 8.  During work hours, Banawis-Olila used WCG's "time and resources" to conduct work for Bicol.  Answer ¶ 11.  Banawis-Olila overcharged WCG customers when Bicol was the deliverer, to generate extra revenue for her business.  Answer ¶ 12.

///

Bicol's business license was suspended in March 2015.  Banawis-Olila did not disclose this fact to her employer, and Bicol continued to deliver for WCG while operating under a suspended license.  Answer ¶¶ 13, 16.  On September 24, 2015, as a result of the investigation into the missing package, WCG discovered that Bicol had been operating illegally and terminated it as vendor.  Answer ¶ 26.

### 2. The Unauthorized Hiring of Jose Gutierrez

In May 2015, Banawis-Olila purported to hire an individual, Jose Gutierrez, to perform delivery services.  Answer ¶¶ 14–15.  Mr. Gutierrez was not paid for his work, despite multiple requests for his paycheck.  Answer ¶¶ 17–19.  As a result, Gutierrez has sued WCG for violations of California labor law.  Answer ¶ 21.  WCG denies that it ever employed Gutierrez.

### 3. The Missing Military Shipment

On August 12, 2015, Banawis-Olila informed her supervisor that a shipment had been lost.  The missing shipment was a "highly sensitive, military product worth tens of thousands of dollars."  Answer ¶ 22.

During the ensuing investigation, WCG alleges that Banawis-Olila's account of how the package became missing changed.  In her first interview, she claimed that it "flew out" of the car when it hit a bump.  A "few days later," on September 23, 2015, she claimed that it was "stolen from the back seat of the driver's car."  Fifteen minutes into the second interview, she "abruptly refused to cooperate further and left the facility.  During the investigation, Plaintiff's husband, Patricio, told a member of [WCG's] management that he thought Plaintiff was 'lying.'"  Answer ¶ 25.

"The police conveyed to [WCG's] management its belief that Bicol Express was somehow involved and covering up something, however, the package was never recovered.  Defendant ultimately lost a very large customer from the incident."  Answer ¶ 27.  Banawis-Olila resigned her position on September 28, 2015.  Her husband Patricio "apparently fled the country for the Philippines."  Answer ¶ 28.

///

### 4. WCG's Counterclaims

Based on the above factual allegations, WCG asserts counterclaims for: (1) breach of contract; (2) breach of the duty of loyalty; and (3) violation of Cal. Bus. & Prof. Code § 17200. Answer ¶¶ 30–46. The breach of contract claim is based on WCG's "Information Security Policy," in which plaintiff promised to safeguard's WCG's information and not to use WCG resources for "illegal [and] unethical" acts or to conduct "personal business using company resources." Answer ¶ 11. The first counterclaim is not challenged in plaintiff's motion to dismiss.

The second counterclaim alleges breaches of the duty of loyalty that Banawis-Olila owed to her employer. Answer ¶ 36. The specific breaches alleged are: (a) using WCG's resources to perform work for Bicol; (b) refusing to cooperate and making material misrepresentations during the investigation into the missing package; (c) fraudulently hiring Gutierrez as a WCG employee without WCG's authorization; and (d) engaging in an unauthorized scheme to overcharge certain customers of WCG to benefit Bicol. Answer ¶ 37. The third counterclaim, alleging violations of the California Unfair Competition Law (the "UCL claim"), is based on "Plaintiff's common law violations." Answer ¶ 43.

Banawis-Olila now brings a motion to dismiss WCG's second and third counterclaims as preempted by the California Uniform Trade Secrets Act ("CUTSA").

## DISCUSSION

### A. Legal Standard

The California Uniform Trade Secrets Act was intended "to occupy the field of trade secret liability to the exclusion of other civil remedies." Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 234 (2010). CUTSA therefore "preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal. App. 4th 939, 958 (2009) (quotation omitted). However, CUTSA does not preempt "(1) contractual remedies, whether or not based upon misappropriation of a

trade secret," and "(2) other civil remedies that are not based upon misappropriation of a trade secret." Cal. Civil Code § 3426.7(b)(1)–(2). Thus, for non-contractual civil remedies, the issue is whether "the gravamen of the wrongful conduct asserted . . . is the misappropriation of trade secrets." K.C. Multimedia, 171 Cal. App. 4th at 961; accord E-Smart Techs., Inc. v. Drizin, No. C 06-05528 MHP, 2009 WL 35228, at *6 (N.D. Cal. Jan. 6, 2009).

B.  **Analysis**

The specific wrongdoing that WCG alleges in support of its duty of loyalty claim is laid out explicitly in the Answer: (1) Banawis-Olila used WCG's resources to perform work for Bicol; (2) Banawis-Olila made misrepresentations during the investigation into the missing package; (3) Banawis-Olila fraudulently hired Gutierrez without authorization; and (4) Banawis-Olila overcharged certain customers of WCG to benefit Bicol. Answer ¶ 37. Quite simply, none of these alleged breaches is "based upon" the misuse of WCG's trade secrets or other confidential information. Cal. Civil Code § 3426.7(b)(2). Therefore, WCG's second counterclaim is not preempted. See Leatt Corp. v. Innovative Safety Tech., LLC, 2010 U.S. Dist. LEXIS 71362, at *17–*22 (S.D. Cal. July 15, 2010) (denying motion to dismiss claims as preempted by CUTSA when the claims "are based on more than just the misappropriation of Plaintiffs' trade secrets").[1]

Seeking to avoid this straightforward result, plaintiff relies primarily on Mattel, Inc. v. MGA Entertainment, Inc., 782 F. Supp. 2d 911 (C.D. Cal. 2011). The issue in Mattel was whether CUTSA "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret," a question that the court answered in the affirmative. 782 F. Supp. 2d at 986. Thus, although Mattel holds that misappropriation of a trade secret is not a "prerequisite"

---

[1] The second counterclaim does include an allegation that "Plaintiff was an employee of Defendant, entrusted by Defendant with its trade secrets." Answer ¶ 36. However, this appears to be for the purpose of establishing that Banawis-Olila owed WCG a duty of loyalty. The specific breaches of the duty listed in paragraph 37 of the Answer do not allege the misuse of confidential information.

5

to CUTSA preemption, the claims at issue in Mattel still concerned "the misappropriation of information." See id. By contrast, the breaches alleged in WCG's second counterclaim have nothing to do with the misuse of confidential information, whether a trade secret or not.

WCG's UCL claim is derivative of its first and second counterclaims. Answer ¶ 43. The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (quotations omitted). Because the court has held that the second counterclaim is not preempted, the UCL claim survives as well, to the extent that the counterclaim is premised on wrongdoing that is not the misappropriation of confidential information.

## CONCLUSION

Because WCG's counterclaims are not based upon the misappropriation of trade secrets, plaintiff's motion to dismiss the counterclaims is DENIED.

**IT IS SO ORDERED.**

Dated: November 4, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge